IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN OF PENNSYLVANIA

GREGORY HAMMOND,                              )
                              Plaintiff,      )
                                             )
        vs.                                  ) Civil Action No. 10-267 E
                                             ) Magistrate Judge Maureen P. Kelly
DEPT CORRECTIONS OF PENN/ALBION,             )
SCI GRATERFORD/DOC OF PA, MAXINE             )
OVERTON (Health Care Administrator),         )
CHRISTINE ZIRKLE (RNS), DANIEL               )
TELEGA (Physician's Assistant), OFFICER      )
JABLONSKI (Correction Officer),              ) ECF Nos. 59, 63
MALINDA ADAMS (Superintendent),              )
J. KORSZNIAK,                                )
                              Defendants.     )

## OPINION

**KELLY, Magistrate Judge**

Plaintiff, Gregory Plaintiff ("Plaintiff " or "Hammond"), is an inmate in the custody of

the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State

Correctional Institution ("SCI") at Albion.   Plaintiff brings this civil rights action against

Defendants SCI Graterford/DOC of PA; Maxine Overton (Healthcare Administrator)

("Overton"); Christine Zirkle (RNS) ("Zirkle"); Daniel Telega (Physician's Assistant) ("Telega");

Officer F. Jablonski (Corrections Officer) ("Jablonski"); Melinda Adams (Superintendent)

("Adams"); and J. Korszniak ("Korszniak"), alleging that Defendants have been deliberately

indifferent to his medical needs in violation of his rights provided by the Eighth Amendment to

the United States Constitution.

Presently before the Court is a Motion to Dismiss Plaintiff's Amended Complaint

submitted on behalf of Defendants Telega and Korszniak ("the Medical Defendants"), ECF No.

59, and a Motion to Dismiss Amended Consolidated Complaint submitted on behalf of

Defendants SCI Graterford/DOC of PA, Overton, Zirkle, Jablonski and Adams ("the DOC Defendants").  ECF No. 63.  For the reasons that follow, both Motions will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Plaintiff suffers from "Degenerate Joint Disease, Peripheral Neuropathy, Gout, back pain, Chronic Kidney Disease." ECF No. 58, ¶13.  Plaintiff alleges that when he was brought into state custody in March of 2010, his kidneys required constant monitoring and maintenance of his medication.  Plaintiff contends, however, that the medical staff at SCI Graterford changed his medications and improperly prescribed a "toxic cocktail of medications" until he was transferred to SCI Camp Hill on April 14, 2010.  Id. at ¶¶ 14-17. Plaintiff alleges that the negligence and deliberate indifference of SCI Graterford's medical staff caused nephritis and irreparable damage to both kidneys.  Id. at ¶¶ 13, 15.

With respect to Defendant Korszniak, Plaintiff claims that during an examination on March 31, 2010, Korszniak acted in an arrogant manner when Plaintiff complained of chronic kidney disease.  Id. at ¶ 14.  Plaintiff also alleges, however, that Korszniak admitted him to the infirmary for his "severe nausea, body aches and consistent cough."  Id.

Plaintiff asserts that he was transferred to SCI Camp Hill on April 14, 2010, and that he was placed on "medical hold" from April 21, 2010 until August 16, 2010, because his "multiple illnesses and conditions presented a special and unique challenge, because the medications for each were causing a cross reactions, which made [him] ill."  Id. at ¶ 20.

It appears that Plaintiff was transferred to SCI Albion on August 17, 2010.  During the intake process, Plaintiff alleges that his medications, knee braces, elbow sleeve, wrist braces, muscle rub and various ointments were confiscated, and that he lost his bottom bunk and bottom tier status.  Id. at ¶ 21.  Plaintiff claims that he was told this was policy and that his property

would be returned after he was seen by the doctor.  Id.  Plaintiff contends, however, that because he "slipped through the cracks somehow," he was not called to see a doctor and had to submit a "sickline" slip in order to get his property back.  Id.

Plaintiff nevertheless alleges that he was seen by Defendant Telega on August 20, 2010. Id. at ¶ 21.  Plaintiff complains that Telega was aloof, nonchalant, rude and unprofessional at the time and that he allegedly told Plaintiff that he was not allowed to have the items that were confiscated from him during intake.  When Plaintiff asked for the muscle rub and A&D ointment, Telega allegedly told Plaintiff to go buy some Vaseline at the Commissary.  Id.  After Plaintiff challenged Telega's statement that A&D Ointment was the same as Vaseline, Telega allegedly became hostile and told Plaintiff, "we're through."  Id.

Plaintiff alleges that thereafter Telega failed to adequately examine him or read his medical records which prevented anyone from learning of his terminal illnesses or chronic issues and that he consequently went without treatment for five months.  Id. at ¶ 22.   Plaintiff also claims that his knee braces, elbow sleeves and bottom bunk/bottom tier status were not returned for over 90 days.  Id.  Plaintiff contends that Telega was negligent in providing care and that Telega "made [it] his business to assure the Plaintiff could not be seen by anyone else or receive the items" confiscated from intake.  Id. at ¶ 23.  Plaintiff also takes issue with Telega's alleged failure to adhere to treatment recommended by doctors and, in particular, with Telega's alleged "dismissal" of his knee problems.  Id. at ¶¶ 22-26, 42.

According to Plaintiff, Telega's superiors "took him at his word," and failed to look at Plaintiff's medical records for themselves.  Id. at ¶ 22.  As such, Plaintiff did not see a doctor for nearly five months and went a substantial period without HIV medications, and without his kidneys being monitored.  Id.  Plaintiff alleges that the SCI Albion medical department mocked

his condition and that Telega was derelict in his duty by failing to adhere to the recommendations of doctors who had previously cared for him at SCI Camp Hill. <u>Id.</u> at ¶¶ 24-26. He also faults Telega for wanting to "pretend to examine him again" when there was already a previously diagnosed knee problem recorded in plaintiffs medical file. <u>Id.</u> at ¶ 23.

Plaintiff further complains that despite the fact that Telega was aware of Plaintiff's history of knee problems, Telega "chose not to do anything" thereby varying from the prescribed recommendations of doctors which culminated in his left knee giving out on July 8, 2011. <u>Id.</u> at ¶ 26. Plaintiff claims that he subsequently sustained another injury which has caused him to be in a wheelchair indefinitely. <u>Id.</u> Plaintiff also alleges, however, that he was given a stabilizer brace for his left knee and that he was seen by a Physical Therapist and/or Doctor concerning his knee injury on: August 29, 2011, September 20, 2011, November 1, 2011, November 10, 2011 and November 21, 2011. Although Plaintiff contends that it was recommended that he have weight training 5 days per week, "which has not yet happened," he acknowledges that he has arranged to have weight training two days per week. <u>Id.</u> at ¶¶ 60-62.

Plaintiff also alleges that Defendant Zirkle, SCI Albion's RN Supervisor, learned of his knee problems "and elected to do nothing." <u>Id.</u> at ¶ 27. Plaintiff claims that Zirkle "interjected" herself into this matter by responding to request slips that were not "titled to her" and "helped to forge an environment of negligence." <u>Id.</u>

With respect to Defendant Overton, Plaintiff contends that she "allowed" his rights to be violated as she was not only aware of the refusal to return his knee braces and elbow sleeves but that she failed to rectify the error. <u>Id.</u> at ¶¶ 28-42. Moreover, Plaintiff claims that Overton compounded the error by lying in her responses to Plaintiff's grievances, stating that his knee brace had been returned. <u>Id.</u> at ¶¶ 28-31. Plaintiff also asserts that Overton ignored previously

diagnoses and treatment recommendations; that, in particular, she "overruled" the recommendations of a Physical Therapist on August 29, 2011, and that of a doctor on November 1, 2011; and that she prevented Plaintiff from being involved in any type of therapy or daily weight training.  Id. at ¶¶ 29-32.   As well, Plaintiff complains that Overton deliberately and willfully refused to provide him with proper medical treatment for knee and back pain and that she colluded with Defendants Adams and Telega to declare Plaintiff medically clear thereby ignoring all previously diagnosed conditions and recommendations.  Id. at 33-42.

Plaintiff alleges that he was transferred to "DA Block" on August 21, 2010, but had not been told by medical that his bottom bunk and bottom tier status had been revoked.  When Officer Jablonski assigned Plaintiff to a top tier and bunk, Plaintiff told him that he had restrictions. Plaintiff states that Jablonski called medical and was told that the restrictions had expired as of August 17, 2010.  Id. at ¶ 43.  Plaintiff alleges that Jablonski ignored his requests to change cells with an inmate assigned to a bottom tier and gave him a direct order to move to the top tier cell which, according to Plaintiff, placed him at risk of harm.  Id.  Plaintiff claims he was in pain until November 5, 2010, when he received a bilateral knee brace and until November 21, 2010, when he was returned to the bottom tier.  Id.

Plaintiff alleges generally that Overton, Adams, Zirkle and Telega denied, hindered or delayed medical attention to him for over eleven months and only responded after his left knee gave way on July 8, 2011, and again on November 21, 2011.  Id. at ¶ 46.  According to Plaintiff, when his left knee gave way on July 8, 2011, he was examined by another Physician's Assistant and received an x-ray, ice bag, crutches, pain medications, and "long term care."  Id. at ¶¶ 26, 47.  On July 22, 2011, he received a walking cane which he used until November 21, 2011, when he was provided a wheelchair.  Id.  Although Plaintiff acknowledges that a knee stabilizer was

ordered for his left knee on August 4, 2011, he alleges that he did not receive it until October 24, 2011, and had to walk "without the required protection," or any other aid.  Id. at ¶ 48.

Plaintiff contends that he sent a request to Overton on September 9, 2011, seeking information about the stabilizer's delay and inquiring as to why his medical records reflect that he was receiving therapy when none had been provided.  Id. at ¶ 49.  On September 19, 2011, when he failed to receive a response from Overton, Plaintiff filed Grievance No. 381685 complaining about the delay, the inaccurate notation in his medical records and "gross negligence and medical malpractice."  Id. at ¶ 50.

With respect to Defendant Adams, Plaintiff alleges that he wrote directly to her as the acting superintendent at SCI Albion informing her of the alleged lack of medical care he was receiving but that she offered no solution, displayed an unwillingness to get involved, and eventually took a "hostile stance."  Plaintiff complains that Adams failed to properly investigate complaints or to remain free from the influence of other staff members and that it was a conflict of interest for Adams to serve as a Grievance Coordinator and the "superintendent assistant" at the same time.  Id. at ¶¶ 51-52, 62.

Plaintiff also alleges that he was sent to the RHU on November 14, 2010, and that he was without either of his two asthma inhalers.  Id. at ¶ 53.  Plaintiff's numerous requests to corrections and medical staff about his need for the inhalers, however, allegedly went unheeded resulting in him having asthma attacks on November 16, 2010, and again on November 18, 2010.  Id.  Plaintiff claims that during these incidents he pressed his call button and was told that medical would be notified, but no one came.  Upon being released from the RHU on November 19, 2010, Plaintiff allegedly discovered that his asthma inhalers were missing from his property and he was sent to the housing unit without them.  Id.  When, according to Plaintiff, he was later

placed in a smoking cell he suffered another asthma attack, requiring him to be taken to the infirmary. While there, Plaintiff allows that he received two injections, two emergency breathing treatments, and was held for 24-hour observation. Id.

Plaintiff subsequently filed Grievance No. 344212 and presently takes issue with Defendant Zirkle's initial response to the Grievance wherein she stated that Plaintiff "contends" to have asthma. Plaintiff complains of Zirkle's "audacity as a nurse, to question the validity of Plaintiff's condition." Id. at ¶ 54.

Plaintiff also alleges that he had serious dental needs when he was transferred to SCI-Albion and that he should have been on "high priority" to receive dental care. According to Plaintiff, he was nevertheless passed over for an entire year until he was seen by Dr. Logan on August 19, 2011. Id. at ¶ 55. Plaintiff alleges that when he advised Dr. Logan that he was "immune compromised," Dr. Logan inquired whether that was due to HIV and terminated Plaintiff's appointment when he learned of his HIV status. Id. Plaintiff contends that Dr. Logan then indicated that Plaintiff would be placed back on a waiting list and should not expect to be called back anytime soon. Id.

Plaintiff subsequently filed Grievance No. 389147, and complains that the response thereto inaccurately reports that he received dental treatment: on August 19, 2011, September 15, 2011, September 22, 2011, October 4, 2011, and October 21, 2011. Id. at ¶ 56. While Plaintiff maintains that his requests for dental treatment were refused on: August 19, 2011, August 30, 2011, September 8, 2011, September 22, 2011, and September 19, 2011, and that he has had no treatment since October 24, 2011, he later acknowledges that he was seen by Dr. Logan on September 15, 2011, October 4, 2011 and October 22, 2011, and that Dr. Logan extracted teeth each time. Id. Nevertheless, Plaintiff has not named a specific individual as a Defendant relative

to his dental treatment but simply states that the Dentist Department is under the "authoritive [sic] umbrella of Ms. Overton's supervision." Id. at ¶ 57.

Plaintiff initiated this action on November 8, 2010, by filing a Motion for Leave to Proceed *in Forma Pauperis* along with a Complaint naming "Dept Corrections of Penna/Albion" as the sole Defendant. ECF No. 1. On February 15, 2011, Plaintiff filed an Amended Complaint naming SCI/Graterford/DOC of PA, Overton, Zirkle, Telega, Jablonski and Adams as Defendants. ECF No. 11. Plaintiff filed a Consolidated Complaint against these same Defendants on November 30, 2011, ECF No. 47, and on January 11, 2012, Plaintiff filed another Consolidated Complaint adding J. Korszniak as a Defendant. ECF No. 58.[1]

A Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) was filed by the Medical Defendants on January 13, 2012. ECF No. 59. On February 13, 2012, the DOC Defendants filed a Motion to Dismiss Amended Consolidated Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF No. 63. Plaintiff responded to the Motions on February 10, 2012, and March 19, 2012, respectively, ECF Nos. 62, 66, rendering both Motions ripe for review.

## II.    STANDARD OF REVIEW

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The court, however, need not

---

[1] Although Plaintiff subsequently filed two Motions for Leave to Supplement Complaint, ECF Nos. 69, 72, both motions were denied. As such, the Consolidated Complaint filed at ECF No. 58 remains the operative complaint and is hereinafter referred to as the "Consolidated Complaint."

accept inferences drawn by the Plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).  See  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim.  Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction.  In reviewing a facial challenge under Rule 12(b)(1), as the DOC Defendants have presented here, the standards relevant to Rule 12(b)(6) apply.  In this regard, the court must accept all factual allegations in the Complaint as true, and the court may only consider the complaint and documents referenced in or attached to the complaint.  See Gould Elec., Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).   Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  See Sixth Angel Shepherd Rescue Inc. v. West, 790 F. Supp. 2d 339, 349 (E.D. Pa. 2011), *aff'd*, ___ F. App'x ___, 2012 WL 1385009 (3d Cir. April 23, 2012) ("[t]heir claim that the Eleventh

Amendment bars this lawsuit is a facial challenge to the Court's jurisdiction").

## II. DISCUSSION

### A. The Medical Defendants' Motion to Dismiss

#### 1. Exhaustion of Administrative Remedies

The Medical Defendants initially argue that Plaintiff's claims brought against them are barred as a matter of law because Plaintiff failed to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires a prisoner filing a Section 1983 action to exhaust all administrative remedies before filing a claim in federal court. 42 U.S.C. § 1997(e)(a).[2] See Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004). Failure to exhaust administrative remedies is an affirmative defense and, hence, the burden lies with party asserting it. Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP, 297 F. App'x 192, 193 (3d Cir. 2008) ("[e]xhaustion is an affirmative defense and, accordingly, the burden is on [the defendant] to demonstrate that [the plaintiff] failed to exhaust her administrative remedies . . ."). See Jones v. Bock, 549 U.S. 199, 211–212, 215 (2007) (rejecting the Sixth Circuit's approach, which "place[d] the burden of pleading exhaustion in a case covered by the PLRA on the prisoner"). Thus, a plaintiff need not plead exhaustion in the complaint and a defendant may only assert the defense in a motion to dismiss filed pursuant to Rule 12(b)(6), if it is clear from the face of the complaint that the plaintiff has failed to exhaust. See Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) ("a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative

---

[2] Specifically, the PLRA states that:

> No action shall be brought with respect to prison conditions under section 1983 of this Title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as area available are exhausted.

42 U.S.C.1997e(a).

defense appears on its face") (citations omitted); <u>Boyd v. Sherrer</u>, 2007 WL 2261553 at *2–3 (D.N.J. Aug. 3, 2007).

In order to properly exhaust his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules . . . ." <u>Woodford v. Ngo</u>, 548 U.S. 81, 90–91 (2006). The DOC's Grievance System Policy, DC–ADM 804, sets out a three-step grievance and appeals process. An inmate is first required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review." <u>Spruill v. Gillis</u>, 372 F.3d at 232, 233. After the initial review by a grievance officer, the inmate has the opportunity to appeal to the Facility Administrator for a second level of review. <u>Id.</u> at p. 232. Finally, an appeal to the Secretary's Office of Inmate Grievances and Appeals is available. <u>Id.</u>

Here, the Medical Defendants have not discussed the allegations set forth in the Consolidated Complaint or the documents attached thereto but merely refer the Court to the Motion to Dismiss filed by the DOC Defendants. Neither the DOC's Motion nor the Consolidated Complaint and its accompanying documents, however, speak to whether or not Plaintiff exhausted his remedies with respect to his claims against Korszniak. Therefore, it cannot be said that Plaintiff has failed to exhaust those claims and the Medical Defendants' Motion in this regard is denied.

It nevertheless appears from the face of the Consolidated Complaint that, with the exception of one grievance, Plaintiff has failed to exhaust his administrative remedies relative to his claims brought against Defendant Telega.

Attached to Plaintiff's Consolidated Complaint are 134 pages of Exhibits which include eight grievances that he has filed while at SCI Albion, only three of which concern Telega and Plaintiff's claims brought against him.  See ECF No. 58-1, pp. 45, 71, 73; ECF No. 58-2, p. 30.

According to these documents, Grievance No. 332166 was filed on August 20, 2010, and was denied on September 7, 2010, after initial review.  ECF Nos. 58-2, pp. 30, 31.  The documents further reflect that Plaintiff subsequently submitted two requests for final review but both were rejected because he failed to appeal the issue to the Facility Manager at the second level.  ECF No. 58-2, pp. 32, 33.

The second grievance relevant to Telega was filed on September 1, 2010 at No. 333551, and denied after initial review on September 17, 2010.  ECF No. 58-1, pp. 45, 46.  According to the Consolidated Complaint, Plaintiff again failed to seek review by the Facility Manager at the second level and, thus, his request for final review was denied.  ECF No. 58-1, p. 48.  Thus, it is clear from the face of the Consolidated Complaint that Plaintiff failed to exhaust the administrative review process with respect to the claims contained in these grievances and, to the extent, Plaintiff's claims here are based on those grievances, they are properly dismissed.

Plaintiff, however, filed Grievance No. 349288 -- the third and last grievance relative to Telega -- on January 5, 2011, wherein he complains that Telega refused his requests to see a doctor and that Telega told him he would have to charge Plaintiff to reexamine his knees.  ECF No. 58-1, p. 71.  Although Plaintiff has submitted documentation that initial review was denied in February, 2011, ECF No. 58-1, pp. 72, 74, there is no further documentation or reference in the Consolidated Complaint regarding the review process or what steps Plaintiff may have taken toward exhaustion.   It therefore is not clear from the face of the Consolidated Complaint that

Plaintiff has failed to exhaust his remedies with respect to these claims and Defendants' Motion in this regard is denied.[3]

## 2. Deliberate Indifference

Alternatively, the Medical Defendants argue that Plaintiff's Consolidated Complaint should be dismissed because Plaintiff has failed to state a claim of deliberate indifference against them.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated and that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d at 235.

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991). Deliberate indifference exists "where [a] prison official: (1) knows of a prisoner's need for medical

---

[3] Although the DOC Defendants have submitted a Declaration from Melinda Adams, who is the Assistant to the Superintendent at SCI Albion as well as a Defendant in this action, in which she declares that Plaintiff failed to appeal Grievance No. 349288 to either the Superintendent or to Final Review, Plaintiff has not been given the opportunity at this stage of the litigation to either discover or submit any contrary evidence. While it is unlikely, given Ms. Adam's Declaration and the seemingly exhaustive number of exhibits Plaintiff has submitted with his Consolidated Complaint, that such evidence exists, at this juncture Plaintiff should nevertheless be given the opportunity to provide it. Cameron v. Montgomery Cnty. Child Welfare Service, 471 F. Supp. 761, 763 (E.D. Pa. 1979), quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[i]n evaluating a motion to dismiss . . . . '[t]he issue is not whether a plaintiff will ultimately prevail but the claimant is entitled to offer evidence to support the claims'"). See Westwood v. Cohen, 838 F. Supp. 126, 128 (S.D.N.Y. 1993).

treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on

a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical

treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Inconsistencies or differences

in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome

bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice,

perform tests or procedures that the inmate desires, or to explain to the inmate the reason for

medical action or inaction, however, does not amount to cruel and unusual punishment.

Maqbool v. University Hosp. of Medicine & Dentistry of New Jersey, 2012 WL 2374689 at * 9

(D.N.J. June 13, 2012). Nor do allegations of negligence or medical malpractice. See Spruill v.

Gillis, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the

proper medical treatment are actionable); Rouse v. Plantier, 182 F.3d at 197, quoting Estelle v.

Gamble, 429 U.S. at 105 (allegations of negligence and medical malpractice are not sufficient to

establish a Constitutional violation as the "inadvertent failure to provide adequate medical care

cannot be said to constitute 'an unnecessary and wanton infliction of pain' . . .").  As such,

allegations that the inmate was provided with medical care, but the care was "inadequate" fails to

state a cognizable claim. See Taylor v. Visinsky, 422 F. App'x 76, 78 (3d Cir. 2011).

     With these standards in mind, it is clear that Plaintiff has failed to state a claim of

deliberate indifference against Defendant Korszniak. The only allegation in the Consolidated

Complaint against Korszniak is that he acted in an arrogant manner during an examination on

March 31, 2010. ECF No. 58, ¶ 14. Being arrogant, however, not only falls woefully short of

being deliberately indifferent to a serious medical need but Plaintiff has also alleged in the

Consolidated Complaint, and has acknowledged in his Response to Defendants' Motion to

Dismiss, that, notwithstanding his arrogant manner, Korszniak admitted him to the infirmary for

his nausea, body aches and consistent cough following the examination.  Id.; ECF No. 62, pp. 2,

5.  Thus, according to Plaintiff's own Complaint, Defendant Korszniak took steps to see that

Plaintiff was treated and his deliberate indifferent claims against Korszniak are properly

dismissed.[4]

   With respect to Defendant Telega, the Court has already found that the only claims to

survive the exhaustion analysis are that Telega refused Plaintiff's requests to see a doctor about

his knees and that Telega told Plaintiff he would have to charge him to reexamine his knees.

ECF Nos. 58, p. 5; 58-1, p. 71.  Neither of these assertions, however, state a claim for deliberate

indifference.

   First, the United States Court of Appeals for the Third Circuit has specifically held that

"[i]f a prisoner is able to pay for medical care, requiring such payment is not 'deliberate

indifference to serious medical needs.'"  Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997),

quoting Helling v. McKinney, 509 U.S. 25, 32 (1993).  See Stankowski v. Farley, 487 F. Supp.

2d 543, 556 (M.D. Pa. 2007).

   Second, it is well established that an inmate does not have a constitutional right to see a

doctor on demand or the doctor of his choice.  McNeil v. Redman, 21 F. Supp. 2d 884, 887 (C.D.

Ill. 1998) (an inmate has no constitutional right to see a doctor on demand).  See Maqbool v.

Univeristy Hosp. of Medicine & Dentistry of New Jersey, 2012 WL 2374689 at *9.  Nor is an

---

[4] To the extent that Plaintiff has argued in his responsive brief that Korszniak also denied his request for medical screening and failed to order diagnostic tests, review his medical charts or send Plaintiff to a specialist, it should be noted that none of these allegations are contained in Plaintiff's Consolidated Complaint and are irrelevant to the instant motion.  See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988) (It is well established that a plaintiff may not amend the Complaint through the brief filed in opposition to a motion to dismiss).  Moreover, even if the Court were to consider these additional assertions, they do not serve to resurrect Plaintiff's deliberate indifference claims as it is readily apparent from the Consolidated Complaint that Korszniak provided Plaintiff with treatment.  Further, Plaintiff's assertions that Korszniak rendered recommendations; that Korszniak's judgment was uninformed; and that the course of treatment Korszniak chose was unacceptable, see ECF No. 62, pp. 2-6, sound in negligence and do not rise to the level of an Eighth Amendment violation.  Spruill v. Gillis, 372 F.3d at 235.

inmate entitled to a particular course of treatment or to have particular tests performed.  Jetter v. Beard, 130 F. App'x 523, 526 (3d Cir. 2005), *cert. denied*, 546 U.S. 985 (2005) (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action); Pilkey v. Lappin, 2006 WL 1797756 at *2 (D.N.J. June 26, 2006) ("refusal to consider inmate's self-diagnoses," or "to perform tests or procedures that the inmate desires" does not amount to cruel and unusual punishment).  Rather, "the decision whether to summon a doctor, like the question of whether certain diagnostic technique or form of treatment should be prescribed, 'is a classic example of a matter for medical judgment,'" and does not give rise to an Eighth Amendment violation.  McNeil v. Redman, 21 F. Supp. 2d at 887, *quoting* Estelle v. Gamble, 429 U.S. at107.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (disagreements over medical judgment do not state Eighth Amendment claims); U.S. ex rel. Hyde v. McGinnis, 429 F.2d 864, 866, 867-68  (2d Cir. 1970), *quoting* Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968) ("[a] difference of opinion between a physician and a patient does  not give rise to a constitutional right or sustain a claim under § 1983"; the conduct must be so harmful that it should be characterized as a barbarous act that shocked the conscience); Hasty v. Johnson, 103 F. App'x 816, 817-18 (5th Cir. 2004) (prisoner failed to state a claim for deliberate indifference to his medical needs where he alleged that medical personnel provided him with purportedly less efficacious drugs for gastroesophageal reflux disease as the prison medical personnel clearly provided him with treatment).  Moreover, the United States Court of Appeals for the Third Circuit has held that, under the deliberate indifference standard, prison medical authorities have "considerable latitude" in exercising this judgment in the diagnosis and treatment of inmate patients and that Court's should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment which

remains a question of sound professional judgment." <u>Carter v. Smith</u>, 2012 WL 1864006 at *1 (3d Cir. May 23, 2012), *quoting* <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (citation omitted).

Here, according to the Consolidated Complaint, Plaintiff was seen by Telega on August 20, 2010, three days after arriving at SCI Albion, at which time Telega ordered x-rays, creams, pain medication and scheduled a follow-up visit. ECF Nos. 58-1, p. 46; 58-2, p. 31. It also appears that Plaintiff subsequently had blood drawn on September 7, 2010, and that on September 13, 2010, x-rays were taken, Plaintiff received an injection and was returned to bottom bunk status. ECF Nos. 58-1, pp. 44, 54; 58-2, pp. 2-3. It also appears that Telega ordered additional x-rays when he saw Plaintiff a second time. ECF No. 58-1, p. 56. Under these circumstances, Plaintiff's claim that Telega was deliberately indifference to his medical needs does appear plausible but, rather suggests only that Plaintiff disagrees with Telega's medical judgment and course of treatment.

Moreover, to the extent that Plaintiff has alleged that Telega somehow prevented him from seeing a doctor or other medical personnel, Plaintiff's assertions in the Consolidated Complaint and the documents he has submitted in conjunction with the Consolidated Complaint are to the contrary. These documents show that Plaintiff was seen by at least six other medical personnel, including Drs. Salemeh, Baker, Maxon, Latizio and McGaughey, on any number of occasions between August 17, 2010, when he arrived at SCI Albion, and January 11, 1012, when he filed the Consolidated Complaint. <u>See</u> ECF No. 58, pp. 7, 9, 10, 11, 13, 18, 19; ECF No. 58-1, pp. 19, 24, 29, 33, 35, 75; ECF No. 58-2, pp. 13, 16, 25. Because Plaintiff has clearly not been prevented from seeing a doctor or other medical personnel, his allegations to the contrary cannot serve to support a finding that Telega was deliberately indifferent to his medical needs.

### 3. Retaliation

Finally, the Medical Defendants argue that Plaintiff has failed to allege sufficient facts to sustain a claim for retaliation against Telega and, thus, to the extent that Plaintiff intended to bring such a claim, it should be dismissed.

In order to establish a clam for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). To constitute an adverse action for purposes of a retaliation claim, the action taken must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Id., *quoting* Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Plaintiff makes two references to retaliation in the Consolidated Complaint. First, in paragraph No. 50, he notes that he filed Grievance No. 381685 on 9/19/11 "asking for answers that were not provided by the Request to Staff on 9/9/11, to Ms. Overton," and then states that "[t]here should be no retaliation to the Plaintiff for engaging in protected conduct under the First and Fourteenth Amendments, so he would not suffer any longer from severe discomfort and pain from knee and joint damage." ECF No. 58, p. 13. Both the 9/9/11 Request to Staff and the Grievance revolve around the alleged delay in receiving the knee stabilizer ordered by Physicians Assistant Brown and Plaintiff's assertion that he is not receiving the physical therapy prescribed by the Physical Therapist. ECF Nos. 52-1, p. 9; 58-1, p. 2; 58-2, p. 13.

Plaintiff, however, has not identified an adverse action that was taken against him as a result of submitting the Request to Staff or filing Grievance No. 381685.[5] Nor has he plead any

---

[5] Because the alleged delay in receiving a knee stabilizer and having physical therapy had already occurred before Plaintiff filed the Request to Staff and the Grievance at issue, those delays cannot serve as the adverse action

facts from which it could be surmised that an adverse action was taken against him as a result of filing the Request to Staff and Grievance No. 381685. Moreover, Plaintiff's 9/9/11 Request to Staff and Grievance No. 381685 relate to his complaints against Overton and neither mention nor pertain to Telega. ECF No. 58-1, p. 29; ECF No. 58-2, p. 13. See ECF No. 58, pp. 6-11.

The second reference to retaliation in the Consolidated Complaint appears in paragraph 59 wherein Plaintiff states that:

> All Defendants here violated Plaintiff's procedural due process clause of the First Amendment when direct retaliation for Plaintiff s numerous complaints and filed grievances concerning the lack of, or quality of medical attention he has been afforded. Plaintiff had been threatened by the Medical department earl[y] on that if he insisted on the return of his knee braces, and bottom bunk, bottom tier status, he'd be blackballed from ever[y] activity and employment. This was a rule enforced only upon Plaintiff . . . .

ECF No. 58, p. 18. Plaintiff, however, has not only failed to allege any facts to support his contention that he has been blackballed from any activities but he has again failed to plead any facts to suggest that his being blackballed was the result of his having filed complaints and grievances. More importantly, however, Plaintiff has not pled any facts at all relative to Telega. He has therefore failed to state a claim of retaliation against Telega and, to the extent he intended to bring such a claim, it is properly dismissed.

Because it is evident from the face of the Consolidated Complaint that Plaintiff failed to exhaust his administrative remedies with respect to all but one of his claims against Telega and that Plaintiff has otherwise failed to establish that either Defendants Korszniak or Telega were deliberately indifferent to his medical needs or that Telega retaliated against him, the Medical Defendants' Motion to Dismiss will be granted.

---

subsequently taken as the result of his having submitted those documents.

**B.    DOC Defendants' Motion to Dismiss**

**1.    Sovereign Immunity**

The DOC Defendants initially argue that Plaintiff's Section 1983 claims against

Defendant SCI Graterford/DOC of PA should be dismissed because they are entitled to

immunity under the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to
> any suit in law or equity, commenced or prosecuted against one of the
> United States by Citizens of another State, or by Citizens or Subjects of any
> Foreign State.[6]

Thus, absent consent by a state, the Eleventh Amendment bars a civil rights suit in federal court

against a state, or a department or agency of the state having no existence apart from the state as

a defendant.  Edelman v. Jordan, 415 U.S. 651, 663 (1974); Laskaris v. Thornburgh, 661 F.2d

23, 25 (3d Cir. 1981), *citing* Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280

(1977).  Pennsylvania has specifically withheld consent to suit in federal courts.  42 Pa.

Cons.Stat. Ann § 8521(b) ("Federal courts. Nothing contained in this subchapter shall be

construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed

by the Eleventh Amendment to the Constitution of the United States").  Moreover, it cannot be

disputed that the DOC, and by extension SCI Graterford, is an administrative department of the

Commonwealth of Pennsylvania.  See 71 Pa. Stat. § 61 (naming the DOC as an administrative

department of the Commonwealth).  As such, SCI Graterford/ DOC of PA are entitled to

Eleventh Amendment immunity and is properly dismissed from this action.[7]

---

[6] The United States Supreme Court has long interpreted the Eleventh Amendment as prohibiting suits in federal court against a state by the defendant state's own citizens as well.  See Hans v. Louisiana, 134 U.S. 1 (1890).

[7] Moreover, the United States Supreme Court held that a state is not "a person" subject to Section 1983 liability and that the non-person status extends to "governmental entities that are considered arms of the state for Eleventh

## 2.    Exhaustion of Administrative Remedies

As previously discussed, the PLRA requires a prisoner filing a Section 1983 action to first exhaust administrative remedies which, in turn, requires the inmate to submit a legible claim or grievance setting forth all relevant facts and identifying all persons with information relevant to his claims; appeal an unfavorable decision by a grievance officer to the Facility Administrator for a second level of review; and submit a final appeal of the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals.  42 U.S.C. § 1997(e)(a); Spruill v. Gillis, 372 F.3d at 232, 233.  Moreover, an inmate's claims against an accused individual is procedurally defaulted where the inmate fails to specifically name the individual in the grievance or where the grievance is untimely or otherwise defective.  Id. at 234.  See Woodford v. Ngo, 548 U.S. at 90-91 (exhaustion of administrative remedies under the PLRA requires "using all steps that the agency holds out," and "demands compliance with an agency's deadlines and other critical procedural rules") (internal quotations and citations omitted).

In this case, it is clear from the face of the Consolidated Complaint and the documents attached thereto that Plaintiff has not only failed to exhaust his administrative remedies relative to his claims of deliberate indifference brought against the DOC Defendants but that those claims are also procedurally defaulted.

### a.    Grievance No. 332166

According to the documents submitted by Plaintiff, Grievance No. 332166 was filed on August 20, 2010, and was denied on September 7, 2010, after initial review.  ECF Nos. 58-2, pp. 30, 31.  The documents further reflect that Plaintiff subsequently submitted two requests for final review but both were rejected because he failed to appeal the issue to the Facility Manager

---

Amendment purposes."  Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71 (1989).  Because the DOC and SCI Graterford are arms of the state, dismissal of Plaintiff's federal claims brought against them are properly dismissed under Will as well.

at the second level.  ECF No. 58-2, pp. 32, 33.  In addition, Plaintiff has not named any of the

DOC Defendants in Grievance No. 332166 and the complaints he raises therein revolve around

his initial visit with Telega and have nothing to do with the DOC Defendants.

### b.       Grievance No. 333551

The second Grievance was filed by Plaintiff on September 1, 2010, at No. 333551, in

which he again complains about Telega, his top bunk status, and his missing knee braces and

elbow sleeve.  ECF No. 58-1, p. 45.  It is clear from the Consolidated Complaint that the

Grievance was denied after initial review on September 17, 2010, and that his request for final

review was denied because Plaintiff failed to seek review by the Facility Manager at the second

level.  ECF No. 58-1, pp. 45, 46, 48.  Further, neither Defendants Adams nor Zirkle are named in

the grievance and Plaintiff states only that he "wrote to Maxine Overton" and "spoke to . . .

Jablonski" about his complaints.  Thus, nothing in the grievance implicates the DOC Defendants

and, to the extent Plaintiff alleges that Defendants Overton, Adams, Zirkle and Jablonski were

deliberately indifferent to this medical needs due to the revocation of his top bunk status and

because his knee braces and elbow sleeve were missing, those claims are procedurally defaulted.

### c.       Grievance No. 349288

As previously discussed, Grievance No. 349288 was submitted on January 5, 2011,

wherein Plaintiff complains that Telega refused his requests to see a doctor and told Plaintiff he

would have to charge him to reexamine his knees.  ECF No. 58-1, p. 71.  Although Plaintiff has

submitted documentation that initial review was denied in February, 2011, ECF No. 58-1, pp. 72,

74, it is unclear from the face of the Consolidated Complaint whether Plaintiff took any further

steps toward exhaustion.  Nevertheless, it is clear that neither Jablonski nor Zirkle are mentioned

in the Grievance and the  only reference Plaintiff makes to Overton and Adams are that he had

written to them regarding Telega and the medical treatment he was receiving.  Id. at p. 71.  Thus,

Grievance No. 349288 does not serve to establish that Plaintiff's claims against the DOC

Defendants have been exhausted.

### d.     Grievance No. 344212

Plaintiff submitted Grievance No. 344212 on December 2, 2010, regarding the five days

he was allegedly without his asthma inhaler while in the RHU and the subsequent revocation of

his bottom bunk status.  ECF No. 20-1, p. 11.  Not only is it clear from the Consolidated

Complaint that his appeal to final review rejected because he failed to comply with the

requirements set forth in DC-ADM 804, but none of the DOC Defendants are named in

Grievance or implicated in his complaints.

### e.     Grievance No. 381685

On September 17, 2011, Plaintiff submitted Grievance No. 381685, complaining about

the lack of medical treatment he was receiving with respect to his knees and, in particular, the

absence of any physical therapy/and or weight lifting.  ECF Nos. 52-1, p. 9; 58-1, p. 29.  Other

than stating that he wrote an Inmate Request to Overton that went unanswered, however, none of

the DOC Defendants are named in the grievance or implicated in the alleged inadequate

treatment of his knees.

### f.     Grievance No. 385473

Similarly, in Grievance No. 385473, which was filed on October 13, 2011, Plaintiff again

complains about the treatment of his knees and the lack of physical therapy.  ECF No. 58-1, p.

82.  Neither Jablonski or Zirkle are named in the Grievance and Adams and Overton, while

mentioned, are not named relative to the alleged lack of medical treatment.  Rather, Plaintiff

merely complains generally about the ineffectiveness of the grievance system and accuses Adams of "working hand and hand" with Overton.  Id.

### g.      Grievance No. 389147

The final Grievance, No. 389147, was filed by Plaintiff on November 14, 2011, and revolves around the alleged lack of dental care he has received at SCI Albion and, in particular, Dr. Logan's alleged refusal to treat Plaintiff after learning that he has HIV.  ECF Nos. 52-1, p. 13; 58-1, p. 95.  None of the DOC Defendants, however, are named in or the subject of the grievance.

These facts, which are evident from the face of the Consolidated Complaint and the documents that Plaintiff has attached thereto, clearly indicate that Plaintiff has failed to exhaust any of his deliberate indifferent claims brought against the DOC Defendants.  As such, Plaintiff's claims against Defendants Overton, Adams, Zirkle and Jablonski are properly dismissed and their Motion will be granted.

## IV.      CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiff's Amended Complaint submitted on behalf of Defendants Telega and Korszniak, ECF No. 59, and the Motion to Dismiss Amended Consolidated Complaint submitted on behalf of Defendants SCI Graterford/DOC of PA, Overton, Zirkle, Jablonski and Adams, ECF No. 63, are granted.

An appropriate Order will be entered.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated:  17 September, 2012

cc:    Gregory Plaintiff
       JL-5438
       SCI Albion
       10745 Rt. 18
       Albion, PA 16475

       All counsel of record via CM/ECF